UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| KIM S. WESTBERG *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 09-1690 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 21, 22 |
| | : | | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Silver State Bank, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### GRANTING THE FDIC'S MOTION TO DISMISS AND
### DENYING MULTIBANK'S MOTION TO DISMISS

## I. INTRODUCTION

This action arises from the repudiation of a construction loan by the Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for the original lender, Silver State Bank. The plaintiffs seek a declaratory judgment against the FDIC and its successor in interest, MULTIBANK 2009-1 RES-ADC VENTURE, LLC ("Multibank"), declaring that the FDIC's repudiation of the loan discharged the plaintiffs' obligation to repay funds previously disbursed by Silver State Bank and voided an existing lien against their property. The plaintiffs also seek to recover damages they allegedly suffered as a result of the FDIC's repudiation of the loan.

Before the court are motions to dismiss the plaintiffs' amended complaint filed by the FDIC and Multibank. For the reasons discussed below, the court grants the FDIC's motion to dismiss and denies Multibank's motion to dismiss.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

The plaintiffs are the owners of real property located in Maricopa County, Arizona. Am. Compl. ¶ 7. In or around May of 2008, they obtained a residential construction loan commitment from Silver State Bank in the principal amount of $1,318,000 for the purpose of constructing a home on the property. *Id.* ¶ 8. In connection with the loan commitment, the plaintiffs executed a Residential Construction Loan Agreement, dated May 20, 2008 ("the Agreement"), a Promissory Note, dated May 20, 2008 ("the Note") and a Deed of Trust, recorded on May 28, 2009, which secured payment of the Note by creating a lien against the property. *Id.* ¶ 9. The Agreement contemplated that the plaintiffs would submit periodic draw requests to Silver State Bank to finance the construction of their home. *Id.*, Ex. 2 ¶ 7.

Following the execution of these loan instruments, the plaintiffs submitted a draw request and received a disbursement in the amount of $171,510.95. *Id.* ¶ 13. The plaintiffs used these funds to pay costs incurred in connection with the construction of the home. *Id.* In or around September 2008, the plaintiffs submitted a second draw request to Silver State Bank, but the draw request was denied. *Id.* ¶ 14. The plaintiffs received no further disbursements from Silver State Bank. *Id.*

---

[1] The FDIC and Multibank have moved to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Insofar as these motions are premised on Rule 12(b)(6), the court assumes the truth of the plaintiffs' allegations. *See Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (observing that "[w]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). While the plaintiffs' factual allegations may be subjected to closer scrutiny for purposes of a Rule 12(b)(1) motion to dismiss, *see Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003), the defendants have not raised any factual disputes that bear on the disposition of the motions now before the court, *see generally* FDIC's Mot. to Dismiss Am. Compl. ("FDIC Mot."); Multibank's Joinder in FDIC Mot. ("Multibank Mot.").

In September 2008, the FDIC notified the plaintiffs that Silver State Bank had been closed and that the FDIC had been appointed as receiver. *Id.* ¶ 15. Thereafter, in April 2009, the FDIC notified the plaintiffs that the FDIC, as receiver for Silver State Bank, had elected to repudiate the Agreement. *Id.* ¶ 17 & Ex. 5. The FDIC further notified the plaintiffs that they were required to notify the FDIC of any claims they may have against the receivership estate arising from the repudiation of the Agreement and that their failure to file such a notice would result in the disallowance of the claim. *Id.*, Ex. 5.

The plaintiffs subsequently submitted a Proof of Claim form to the FDIC, seeking compensation for costs resulting from the construction delay caused by the FDIC's repudiation of the Agreement. *Id.* ¶ 18 & Ex. 6 ("Proof of Claim"). By letter dated July 6, 2009, the FDIC notified the plaintiffs that their claim for alleged damages had been denied. *Id.* ¶ 19 & Ex. 7.

After repudiating the Agreement, the FDIC issued a statement to the plaintiffs directing them to repay the funds previously disbursed by Silver State Bank. *Id.* ¶ 20. The FDIC did not release the plaintiffs from their obligations under the Note or release the Deed of Trust recorded against the plaintiffs' property. *Id.*

On September 3, 2009, the plaintiffs filed a complaint against the FDIC seeking a declaratory judgment that the FDIC's repudiation of the Agreement released the plaintiffs from all of their obligations under the Note and Deed of Trust. Compl. ¶ 24. The complaint also included a claim for damages the plaintiffs' allegedly suffered as a result of the FDIC's repudiation of the Agreement. *Id.* ¶¶ 25-26.

On November 9, 2009, the FDIC moved to dismiss the plaintiffs' complaint. *See generally* FDIC's Mot. to Dismiss Compl. After the motion to dismiss was fully briefed, the FDIC sold the plaintiffs' loan to Multibank through a Loan Contribution and Sale Agreement

(the "Sale Agreement"). Am. Compl. ¶ 23 & Ex. 8. After purchasing the loan from the FDIC, Multibank demanded that the plaintiffs satisfy their obligations under the Note. *Id.* ¶ 23.

In light of the sale of the loan to Multibank, the plaintiffs filed an amended complaint on July 19, 2010. *See generally* Am. Compl. In Count I of the amended complaint, the plaintiffs seek a declaratory judgment against the FDIC and Multibank stating that the FDIC's repudiation of the Agreement released the plaintiffs from all of their obligations under the Note and Deed of Trust. *Id.* ¶ 28. In Count II, the plaintiffs seek to recover damages from the FDIC for harm they allegedly suffered as a result of the FDIC's repudiation of the Agreement. *Id.* ¶¶ 29-30. The FDIC filed a motion to dismiss the amended complaint on August 25, 2010, *see generally* FDIC Mot., and on August 27, 2010, Multibank joined in the FDIC's motion, *see generally* Multibank Mot. The FDIC and Multibank seek dismissal of Count I under Federal Rule of Civil Procedure 12(b)(1) and the FDIC seeks dismissal of Count II under Federal Rule of Civil Procedure 12(b)(6). *See generally* FDIC Mot.; Multibank Mot. With these motions now ripe for adjudication, the court turns to the applicable legal standards and the parties' arguments.

## III. ANALYSIS

### A. The Court Grants the FDIC's Motion to Dismiss and Denies Multibank's Motion to Dismiss Count I of the Amended Complaint

#### 1. Legal Standard for a 12(b)(1) Motion to Dismiss

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004)

(noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *See Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Instead, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

### 2. The Court Lacks Subject Matter Jurisdiction Over Count I as Against the FDIC

The FDIC contends that it relinquished any legally cognizable interest it had in the loan when it sold the loan to Multibank. FDIC Mot. at 6-7. Because it relinquished its interest in the

loan, the FDIC argues that the plaintiffs' claim for declaratory relief against it is moot and that the court therefore lacks subject matter jurisdiction over that claim.[2] *Id.* at 7. The plaintiffs respond that, notwithstanding the sale of the loan to Multibank, the FDIC retained substantial rights and obligations related to the loan. Pls.' Opp'n to FDIC Mot. ("Pls.' FDIC Opp'n") at 5. The plaintiffs argue that as a result of the FDIC's "continuing entanglement" in the loan, the FDIC has a legally cognizable interest in the outcome of their claim for declaratory relief and is appropriately included as a party to that claim. *Id.* at 6.

Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues. *Flast v. Cohen*, 392 U.S. 83, 96 (1968). "The doctrine of mootness is a logical corollary of the 'case or controversy' requirement[.]" *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 90 (D.C. Cir. 1986). In cases where challenged conduct ceases and "there is no reasonable expectation that the wrong will be repeated . . . it becomes impossible for the court to grant any effectual relief whatever to the prevailing party . . . [and] any opinion as to the legality of the challenged action would be advisory." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal quotations and citations omitted). Accordingly, a party may move to dismiss a case under Rule 12(b)(1) on grounds of mootness. *Comm. in Solidarity with People of El Salvador v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991); *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060 (Fed. Cir. 1995); *Am. Historical Ass'n v. Peterson*, 876 F. Supp. 1300, 1308 (D.D.C. 1995).

---

[2] As alternate grounds for dismissal of Count I, the FDIC argues that the plaintiffs failed to exhaust their administrative remedies and that entry of a declaratory judgment would constitute a judicial restraint prohibited by the Federal Deposit Insurance Act ("FDI Act"). *See* FDIC Mot. at 8-12. Because the FDIC's motion to dismiss Count I is resolved on the basis of mootness, the court does not reach the FDIC's alternative arguments.

A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *City of Erie*, 529 U.S. at 287 (internal quotations omitted). An intervening event will render a claim moot if it becomes impossible for the court to grant the prevailing party effective relief. *Lemon v. Geren*, 514 F.3d 1312, 1316 (D.C. Cir. 2008); *see also Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (noting that "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed" as moot) (internal quotation omitted); *In re DSC, Ltd.*, 486 F.3d 940, 945 (6th Cir. 2007) (recognizing that "[a] claim becomes moot . . . 'when the plaintiff receives the relief sought or when it is factually, not legally, impossible to receive such relief'" (quoting *Liberles v. Cook Cnty.*, 709 F.2d 1122, 1127 (7th Cir. 1983))). A case is not moot, however, so long as any single claim for relief remains viable, as the remaining live issues satisfy the case-or-controversy requirement. *Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 978 (D.C. Cir. 1991) (internal quotations and citations omitted). The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden. *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 458-59 (D.C. Cir. 1998).

Courts must evaluate mootness "through all stages" of the litigation in order to ensure that a live controversy remains. *21st Century Telesis Joint Venture v. Fed. Commc'ns Comm'n*, 318 F.3d 192, 198 (D.C. Cir. 2003) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). As a result, "[e]ven where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that the decision

will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990)).

In Count I of their complaint, the plaintiffs seek a declaratory judgment that the FDIC's repudiation of the Agreement released and discharged the plaintiffs from any and all obligations under the Note and Deed of Trust. *See* Am. Compl. ¶¶ 27-28. Because the FDIC sold the loan to Multibank, Multibank is the only party that could enforce the plaintiffs' obligations under these instruments. *See* ARIZ. REV. STAT. § 47-3203 (stating that transfer of an instrument "vests in the transferee any right of the transferor to the instrument"); *id.* § 47-3301 (stating that the "'[p]erson entitled to enforce' an instrument means the holder of an instrument"). Indeed, the FDIC has acknowledged that it "cannot seek to enforce the [plaintiffs'] obligations under the Note . . . [and is not] entitled to loan payments from the [plaintiffs]." *See* FDIC Mot. at 6. The plaintiffs do not dispute this fact. *See generally* Pls.' FDIC Opp'n. It therefore appears that the FDIC is no longer the appropriate subject of the declaratory relief the plaintiffs seek.

Although the plaintiffs contend that the FDIC has a "continuing entanglement" in the loan, they have not explained how such entanglement gives the FDIC any interest in the repayment of the loan, which is the subject of the declaratory relief sought by the plaintiffs. For example, the plaintiffs seize upon the fact that the FDIC has agreed to be "responsible and monetarily liable for [the] lawsuit notwithstanding the assignment." Pls.' FDIC Opp'n at 5. Yet any obligations the FDIC has to Multibank under the Sale Agreement are separate and distinct from the plaintiffs' loan obligations. Even if the FDIC is ultimately liable to Multibank for the costs and expenses of this litigation or any award rendered in favor of the plaintiffs, the plaintiffs have not explained how such liability would give the FDIC a legally cognizable interest in the

8

plaintiffs' repayment of the loan to Multibank.

Equally unavailing is the plaintiffs' contention that the FDIC has retained certain claims against third parties for "misconduct in connection with the initiation, origination or servicing of the Loan." Pls.' FDIC Opp'n at 6; *see also* Am. Compl., Ex. 8 § 2.7. The retained rights do not encompass the right to enforce the repayment of the plaintiffs' loan. *See* Am. Compl., Ex. 8 § 2.7. Therefore, the fact that the FDIC retained certain claims related to the loan, including potential claims against the plaintiffs, does not give the FDIC the authority to seek repayment of the loan, which is the subject of the declaratory relief sought by the plaintiffs.

Finally, the plaintiffs contend that under the Sale Agreement,[3] there are a number of circumstances under which the FDIC may be required to repurchase the plaintiffs' loan. *See* Pls.' FDIC Opp'n at 6. The fact that the FDIC has a contingent future interest in the loan, however, does not support a conclusion that the FDIC is a proper defendant to the plaintiffs' currently pending claim for declaratory relief; rather, it is clear that, due to the intervening sale of the loan to Multibank, this dispute does not affect any rights currently held by the FDIC, and the contention that this dispute will affect rights the FDIC may acquire in the future is premised on pure speculation. *See 21st Century Telesis Joint Venture*, 318 F.3d at 198 (recognizing that a claim becomes moot when events transpire such that "the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future" (quoting *Clarke*, 915 F.2d at 701)).

The court cannot declare that the plaintiffs are relieved from obligations to the FDIC that

---

[3] Although the plaintiffs state that the FDIC's obligation to repurchase the loan may be triggered under the Agreement, *see* Pls.' FDIC Opp'n at 6, it appears that any obligation of the FDIC to repurchase the loan could only arise under the Sale Agreement between the FDIC and Multibank, *see generally* Am. Compl., Ex. 8.

9

no longer exist or prevent the FDIC from exercising rights it no longer possesses. Because it would be impossible to grant the plaintiffs any meaningful relief against the FDIC on Count I of the amended complaint, the court grants the FDIC's motion to dismiss Count I as against it.

### 3. Multibank Has Failed to Articulate Any Basis for Relief in its Motion to Dismiss

In its motion to dismiss, the FDIC also argues that the plaintiffs' claim for declaratory relief should be dismissed *as against the FDIC* on three jurisdictional grounds: mootness based on the FDIC's sale of the loan to Multibank, failure to exhaust administrative remedies and the FDI Act's limitation of the courts' power "to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." *See generally* FDIC Mot. at 5-12. After the FDIC filed its motion to dismiss the amended complaint, Multibank filed a two-page brief joining in the FDIC's motion. *See generally* Multibank Mot. Multibank contends that its defenses are aligned with those of the FDIC and has adopted the FDIC's arguments. *See generally id.* Without explaining how those arguments apply to the plaintiffs' claim *against Multibank*, Multibank requested that Count I be dismissed against it for the reasons expressed in the FDIC's motion. *See generally id.*

In opposing Multibank's joinder in the FDIC's motion to dismiss, the plaintiffs noted that Multibank "assumes without analysis or citation to authority that the FDIC's jurisdictional arguments . . . apply equally to MultiBank." Pls.' Opp'n to Multibank Mot. at 1. The plaintiffs contend that even if the FDIC's jurisdictional arguments support dismissal of Count I as against the FDIC, they do not apply to the claim for declaratory relief as against Multibank. *See generally id.*

After receiving the plaintiffs' opposition brief, Multibank filed a reply memorandum in support of its "motion to dismiss." *See generally* Multibank's Reply. In its reply brief,

Multibank specified that it only joined in the FDIC's argument that the plaintiffs failed to exhaust their administrative remedies. *See id.* at 2 n.1. Multibank then articulated, for the first time, its position as to why the plaintiffs' purported failure to exhaust administrative remedies should serve as a jurisdictional bar to their claim for declaratory relief against Multibank. *See id.* at 2-4.

By failing to articulate in its joinder how the FDIC's jurisdictional arguments apply to the plaintiffs' claims against Multibank and support the relief Multibank requested, Multibank deprived the plaintiffs of a meaningful opportunity to respond to those arguments. The court therefore declines to consider those arguments at this time. *See Aleutian Pribilof Islands Ass'n, Inc. v. Kempthorne*, 537 F. Supp. 2d 1, 12 n.5 (D.D.C. 2008) (noting that "it is a well-settled prudential doctrine that courts generally will not entertain new arguments first raised in a reply brief" (citing *Herbert*, 974 F.2d at 196)). Accordingly, the court denies Multibank's motion to dismiss Count I as against Multibank.

### B. The Court Grants the FDIC's Motion to Dismiss Count II of the Amended Complaint

#### 1. Legal Standard for a 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and

defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-46, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."
*Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

### 2. The Court Dismisses Count II Without Prejudice for Failure to State a Claim for Which Relief Can Be Granted

The FDIC has also moved to dismiss Count II of the plaintiffs' amended complaint in which they seek compensatory damages resulting from the FDIC's repudiation of the Agreement, for failure to state a claim upon which relief can be granted. FDIC Mot. at 13-17. The FDIC acknowledges that the Proof of Claim form that was attached to the amended complaint itemizes the plaintiffs' purported "Project Delay costs." *Id.* at 16; *see also* Am. Compl., Ex. 6. But to the extent the plaintiffs rely on those purported costs to support their claim for damages, the FDIC contends that the plaintiffs failed to plead sufficient facts to demonstrate that those costs constitute legally compensable damages and that the FDIC's repudiation of the Agreement caused those alleged damages. FDIC Mot. at 15-16. The plaintiffs respond that the "detailed, five-page itemization of their loss" that is set forth in the Proof of Claim form "more than meets [their] notice pleading obligation." Pls.' FDIC Opp'n at 25.

The Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") authorizes the recovery of damages that arise from the FDIC's repudiation of a contract. 12 U.S.C. § 1821(e)(3). Such damages are "limited to actual direct compensatory damages" and are "determined as of the date of the appointment of the conservator or receiver." *Id.* § 1821(e)(3)(A). The statute expressly precludes the recovery of certain types of damages, including "(i) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." *Id.* § 1821(e)(3)(B). Thus, compensable damages under the FIRREA are those that "flow[] directly from the repudiation, which make one whole, as opposed

to those which go farther by including future contingencies such as lost profits and opportunities or damages based on speculation." *McMillian v. Fed. Deposit Ins. Corp.*, 81 F.3d 1041, 1055 (11th Cir. 1996); *see also Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 246 (D.C. Cir. 1995) (holding that a plaintiff's reliance damages were recoverable under the FIRREA); *Office & Prof'l Emps. Int'l Union, Local 2 v. Fed. Deposit Ins. Corp.*, 27 F.3d 598, 604 (D.C. Cir. 1994) (noting that in the FIRREA, "Congress appears . . . to have wished to distinguish between those damages which can be thought to make one whole and those that are designed to go somewhat further and put a plaintiff securely in a financial position he or she would have occupied but for the breach").

To support their claim for damages, the plaintiffs allege only that the FDIC repudiated a contract and that "[they] have suffered actual, direct compensatory damages in an amount to be proven at trial which they are entitled to recover." Am. Compl. ¶ 30. The plaintiffs also attached to the amended complaint an itemized list of their "project delay costs," *see id.*, Ex. 6, and the court may consider and draw reasonable inferences from documents attached to the complaint, *see* FED. R. CIV. P. 10(c) (stating "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"). Nonetheless, the amended complaint includes no factual allegations to support an inference that the alleged damages are compensable under the

FIRREA or that the FDIC's repudiation of the Agreement actually caused the alleged damages.[4]
*See generally* Am. Compl.

Given the dearth of allegations supporting the plaintiffs' claim for damages, the court cannot ascertain whether the alleged damages would be compensable under the FIRREA. Therefore, the plaintiffs have failed to state a plausible claim for relief that would allow the court to reasonably infer, beyond mere speculation, that the FDIC is liable to the plaintiffs. *See Iqbal*, 129 S. Ct. at 1949; *Ravenswood Ctr., LLC v. Fed. Deposit Ins. Corp.*, 2010 U.S. Dist. LEXIS 66598, at *11 (N.D. Ill. July 6, 2010) (granting the FDIC's motion to dismiss a complaint in which the plaintiff failed to plead sufficient facts from which the court could infer that the plaintiff suffered damages that are compensable under the FIRREA). Accordingly, the court dismisses Count II without prejudice.

## IV. CONCLUSION

For the foregoing reasons, the court grants the FDIC's motion to dismiss Count I, denies Multibank's motion to dismiss Count I and grants the FDIC's motion to dismiss Count II,

---

[4] There are several allegations in the amended complaint from which the court can infer that the FDIC's repudiation of the Agreement caused the plaintiffs to suffer damages. *See, e.g.*, Am. Compl. ¶ 22 (alleging that the plaintiffs "were forced to liquidate assets to pay for the completion of the construction of the home on the Property"). Nonetheless, in opposing the FDIC's motion to dismiss, the plaintiffs rely only on the itemized list of costs set forth in the Proof of Claim form to support Count II, *see* Pls.' FDIC Opp'n at 25, and there is no apparent nexus between the allegations concerning the plaintiffs' post-repudiation construction financing and the purported "project delay costs" for which the plaintiffs seek compensation, *see generally* Am. Compl. While the court must give the plaintiff "the benefit of all reasonable inferences derived from the facts alleged," *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006), the plaintiffs do not point to any allegations from which the court can infer that the FDIC caused the specific harm for which they seek compensation and the court need not "strain to find inferences favorable to the plaintiffs," *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotation omitted).

15

dismissing that count without prejudice. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 4th day of January, 2011.

                                        RICARDO M. URBINA
                                        United States District Judge