IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KIM S. WESTBERG and LAVERNE V. WESTBERG, husband and wife,<br><br>    Plaintiffs,<br><br> vs.<br><br>MULTIBANK 2009-1 RES-ADC VENTURE, LLC,<br><br>    Defendant. | Case No. 1:09-cv-01690<br>Assigned To:  Urbina, Ricardo M. |

## **PLAINTIFFS' SUPPLEMENTAL BRIEF**

Plaintiffs Kim and Laverne Westberg hereby respectfully file this supplemental brief pursuant to the Court's January 3, 2012 Minute Order requesting supplemental briefing on two related jurisdictional questions:  Specifically, (i) whether "this court may lack jurisdiction to adjudicate an action seeking a determination of rights with respect to any asset of a failed bank for which the FDIC is a receiver under 12 U.S.C. § 1821(d)(13)"; and (ii) whether "plaintiff's claims have not been administratively exhausted." January 3, 2012 Minute Order.  These two inquiries interrelate and were addressed together by Plaintiffs in opposing earlier requests for dismissal by FDIC and Multibank. *See* D.E. 24 at 2, 7-11; D.E. 25 at 5-7; *see also* D.E. 11 at 1-2.  The relevant statutory provision is 12 U.S.C. § 1821(d)(13)(D), which generally requires that a plaintiff exhaust the administrative claims process under FIRREA[1] before pursuing certain types of claims.  As elaborated below, the statutory provision is necessarily and categorically inapplicable to a declaratory judgment action that is prompted by the conduct of FDIC's loan

---

[1] The acronym FIRREA is used herein to refer to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989.

assignee, as is true here.  In any event, however, the damages claims that the Westbergs filed with the FDIC, precisely per FDIC's account and direction as to the administrative review available from FDIC, accomplished any requisite exhaustion.

I.      **THE JURSDICTIONAL BAR IN SECTION 1821(d)(13)(D) DOES NOT APPLY TO MULTIBANK.**

Two interrelated jurisdictional provisions seem implicated by the Court's Minute Order. The first is the jurisdictional bar in Section 1821(d)(13)(D), which provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>>
>> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821 (d)(13)(D).  The "[e]xcept as otherwise permitted" clause refers to the jurisdictional grant in Section 1821(d)(6)(A), which is the second provision.  It confers jurisdiction upon a district court to review a "claim" that has been denied at the administrative level.  Courts have described these provisions as together creating an administrative exhaustion requirement for a "claim" — a federal court's jurisdiction to review a "claim" thus depends on initial submission at the administrative level.

### A. A Suit Against A Third-Party Based On Its Own Conduct Is Not A "Claim" Against FDIC Under FIRREA.

The D.C. Circuit just recently analyzed the scope and interplay of these jurisdictional provisions in *American National Insurance Company v. Federal Deposit Insurance Corporation*, 642 F.3d 1137 (D.C. Cir. 2011). There, the FDIC had seized Washington Mutual Bank ("WMB") and as receiver sold its producing loans to JPMorgan Chase ("JPMC"), allegedly at a price substantially below market. Bondholders of WMB and an affiliated entity then sued JPMC alleging that it had "engineered" the bank's failure to "strip away [its] valuable assets." *Id*. at 1139. After JPMC filed its answer, the FDIC intervened in the case and removed it to district court. The FDIC and JPMC then moved to dismiss the case for lack of jurisdiction pursuant to Section 1821(d)(13)(D), because the bondholders had not filed their claims at the administrative level beforehand. They argued that such administrative filing was necessary because the claims sought "payment from, or . . . seek[] a determination of rights with respect to, the assets" of the failed bank under subsection (i) of Section 1821(d)(13)(D) and also "relat[ed] to" an act of the FDIC a receiver (*i.e.*, its assignment of the loans to JPMC) under subsection (ii). *Id. at 1141*. The district court granted the dismissal, but the D.C. Circuit then reversed on appeal.

According to the D.C. Circuit, the word "claim" in Section 1821(d)(13)(D) is "a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process, and the only claims that are resolvable through the administrative process are clams against a depository institution for which the FDIC is receiver." *Id*. at 1142. Because JPMC was not the "depository institution" in receivership, but a third-party sued for *its own* conduct, "the[] suit is not a claim within the meaning of the Act and thus is not barred by subsection (ii)" of Section

3

1821(d)(13)(D).  *Id*.  That left only the portion of subsection (i) that "reaches more broadly than (ii), encompassing not just 'claims,' but also action[s] for payment from, or . . . seeking a determination of rights with respect to the assets of the depository institution for which the [FDIC] has been appointed receiver." *Id*. at 1142.  Neither did that apply because, "Appellants' suit seeks relief from JPMC for its own conduct; the mere fact that JPMC now owns assets that Washington Mutual once owned does not render this suit one against or seeking a determination of rights with respect to those assets." *Id*.

The D.C. Circuit's overarching concern was to avoid a construction of Section 1821(d)(13)(D) that would preclude jurisdiction for claims that could not have been adjudicated at the administrative level.  If a claim falls outside the administrative review process but within the jurisdictional bar of Section 1821(d)(13)(D), it becomes unreviewable either administratively or judicially, which "transform[s] FIRREA from an administrative exhaustion scheme into a grant of immunity." *Id*. at 1143.  That would be "troubling from a constitutional perspective and certainly not the goal of FIRREA."  *Id*. (*quoting Auction Co. of Amer. v. FDIC*, 141 F.3d 1198, 1200 (D.C. Cir. 1998)).  The D.C. Circuit rightly avoided any such constitutional defect by construing "claim" in Section 1821(d)(13)(D) to match the term's definition in the administrative review provisions of FIRREA, such that no "claim" could be judicially barred that had not been eligible for administrative review.  Claims against third-parties for their own conduct are not so eligible, and thus not jurisdictionally barred, because "FIRREA's administrative claims process is available only to claims against depository institutions." *Id*. at 1143.

### B. Plaintiffs' Request For Declaratory Relief Against Multibank Is Based On Multibank's Own Conduct.

It is critical to recognize this is *not* a claim against the FDIC or a receivership asset held by the FDIC. It is solely one for declaratory relief against the loan assignee based on the *assignee's* conduct. Since acquiring the loan, Multibank has itself maintained, as reflected in its filings in this case, that the Westbergs remain contractually bound under the loan documents notwithstanding the FDIC's repudiation of the loan – or, if not bound contractually, that the Westbergs are obliged at least by equity to continue performing. Lest there be any doubt, the Westbergs put on record, more than a year ago, their readiness to have this case dismissed if only Multibank were to relent and abandon its own efforts to enforce the terms of the loan:

> [W]ere MultiBank to agree that the loan it purchased from FDIC poses no continuing obligations *vis a vis* the Westbergs because any such obligations were cancelled by virtue of FDIC's statutory repudiation, just as the Westbergs contend, the parties' dispute on that point might be obviated; in that instance alone the case might be dismissed without need for further adjudication by this Court. So long as MultiBank continues (as it has through the present) to claim rights to enforce what it contends are continuing loan obligations on the part of the Westbergs, however, the instant controversy remains very much live and the case cannot be dismissed.

*See* D.E. 25 at 2.

Of course, Multibank has not opted to accept that invitation. Instead, Multibank has persisted in its enforcement efforts that necessitate continuation of this action and adjudication of the Westbergs' claimed rights relative to Multibank's claimed rights – respective rights that were not yet claimed, much less susceptible to adjudication, in the prior administrative process. Stated differently, it was not the FDIC's repudiation, but Multibank's own decision about how to interpret and enforce the loan, after acquiring it post-repudiation, that necessitated and conferred the right to request a declaratory

judgment against Multibank. In sum, there was no occasion and no opportunity to anticipate, much less resolve, the dispute specifically between the Westbergs and Multibank over the loan that is now the subject of the declaratory judgment request.

To be clear, the Westbergs' declaratory judgment claim does *not* challenge the FDIC's repudiation of the loan, which the Westbergs concede was within its authority, nor does it challenge the FDIC's interpretation of the legal effect of such repudiation, which has been rendered beside the point given that FDIC no longer holds the loan. What is now at issue is the position taken by *Multibank* and its demands against the Westbergs. Such a declaratory judgment would be equally necessary, and equally permitted by Section 1821(d)(13)(D), if, for instance, Bank of America – which all can agree is a complete stranger to this loan – were attempting to press wrongful claims against the Westbergs under the auspices of the FDIC's former loan. In this declaratory judgment action, the Westbergs contend that Multibank has opted to attempt wrongful enforcement of a loan that is, in fact, inoperative. What is at issue, therefore, is Multibank's own conduct as loan assignee, post assignment.

The mere fact that actions by the FDIC lie in the background of this dispute with Multibank does not mean there is a "claim" being made against the receivership estate so as to offend the relevant jurisdictional provisions. As the D.C. Circuit explained in *American National*, simply because the FDIC's conduct forms "one link in the causal chain connecting . . . [the assignee's] wrongdoing with . . . [plaintiff's] injuries is insufficient to transform the complaint into one against the FDIC." *Id*. at 1144. Here, too, there is no claim being pressed against the FDIC or against the receivership assets it manages. Nor is FDIC's pre-assignment conduct even at issue; to the contrary, the Westbergs have repeatedly accepted, and here reiterate, the validity of FDIC's statutory repudiation of the loan. The only thing at issue is the

6

position Multibank has taken relative to the loan after taking ownership of it.   Accordingly, the jurisdictional bar of Section 1821(d)(13)(D) does not enter play.

Confirming as much, the Ninth Circuit held in *Henrichs v. Valley View Development*, 474 F.3d 609 (9th Cir. 2007), that "the requirement to exhaust administrative remedies applies only in an action against the FDIC as receiver," not against a third-party. *Id.* at 614.  The issue in *Henrichs* was, as here, whether the FDIC's privileged status under Section 1821(d)(13)(D) extended to an assignee of the loan, which the Ninth Circuit held it did not:

> At the time of the state court litigation, the FDIC had no interest in the note because it had already assigned the note. Although Henrichs attempts to paper over this fact by claiming that he stepped into the shoes of the FDIC for the purposes of the state court litigation, the statute does not reach assignees of assets once owned by the FDIC.

*Id.*

The Fifth Circuit held the same in *FDIC v. McFarland*, 243 F.3d 876 (5th Cir. 2001):

> It would be absurd for us to interpret section 1821(d)(13)(D) as assignable to the current holder, Joslin. The claim procedures articulated in 12 U.S.C. § 1821(d)(5)-(11) are predicated on the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply to the property.

*Id*. at 887 n.42.[2]

### C.     The FDIC Likewise Interprets Section 1821(d)(13)(D) As Inapplicable To A Loan Assignee.

The FDIC, as the agency charged with administering this statutory scheme, has likewise interpreted Section 1821(d)(13)(D) as inapplicable to a claim against an assignee.  FDIC was a

---

[2] The decision of this Court cited in the Minute Order, *MBIA Insurance Corp. v. FDIC*, 2011 WL 4721293 (D.D.C. 2011), does not appear to speak to the instant question whether and how Section 1821(d)(13)(D) applies to a request for declaratory judgment against a third party. In that case, FDIC's conduct as conservator and ordering of priorities for repayment were being challenged.

7

party in *Henrichs* and submitted as follows in successfully opposing plaintiff's petition for a writ of certiorari from the Supreme Court:

> . . . As the court of appeals correctly concluded, Section 1821(d)(l3)(D) applies only in an action against the FDIC. It does not apply in an action . . . against a private party who owns an asset that was formerly held by an FDIC receivership, particularly when the receivership has since terminated.
>
> Section 1821(d)(l3)(D) is designed to preserve the integrity of the administrative claims process established by FIRREA. It therefore "bars judicial review of any non-exhausted claim * * * which is 'susceptible of resolution through the claims procedure.'"*Henderson* v. *Bank of New England,* 986 F.2d 319, 321 (9th Cir.) (quoting *Rosa* v. *RTC,* 938 F.2d 383,394 (3d Cir.), cert. denied, 502 U.S. 981 (1991)), cert. denied, 510 U.S. 995 (1993).
>
> But Section 1821(d)(l3)(D) does not apply to claims that are not susceptible of resolution through the administrative procedure, such as claims against a private party who holds an asset that was once held by an FDIC receivership, particularly when the receivership has terminated. In that circumstance, there is no administrative claims procedure to exhaust, because that procedure governs only claims against the FDIC receivership. See 12 U.S.C. 1821(d)(3)-(6) and (10).

D.E. 25, Ex. 1 at 7-8

As the FDIC explained in its brief, construing Section 1821(d)(13)(D) as stopping short of a declaratory judgment clam against a loan assignee is supported by the last portion of subsection (i) – "including assets which the Corporation may acquire from itself as such receiver." 12 U.S.C. § 1821(d)(13)(D)(i). This clause extends subsection (i)'s jurisdictional ban to assets the FDIC as receiver assigns to itself in its corporate capacity. The FDIC is quite right that, "[i]f Section 1821(d)(13)(D) generally applies to assets that the receivership has assigned to others, there would have been no need to specify that the assets assigned to the FDIC in its corporate capacity are also covered." D.E. 25, Ex. 1 at 9. The upshot is that subsection (i) divests a court of jurisdiction as to an assignee only if the assignee is the FDIC, but not otherwise.

Because the FDIC's interpretation is a reasonable construction of Section 1821(d)(13)(D), it is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). *See Village of Barrington, Ill. v. Surface Transp. Bd.,* 636 F.3d 650, 658 (D.C. Cir. 2011) ("[o]rdinarily, we review an agency's construction of the statute which it administers under the familiar principles of *Chevron*") (internal quotation marks omitted); *Chase Bank USA, N.A. v. McCoy,* -- U.S. --, 131 S. Ct. 871, 880, 178 L. Ed. 2d 716 (2011) (holding *Chevron* deference applies to agency position articulated in appellate brief); *Polm Family Found., Inc. v. United States*, 644 F.3d 406, 409 (D.C. Cir. 2011) (same); *Bigelow v. Department of Def.*, 217 F.3d 875, 878 (D.C. Cir. 2000) (same).

D.  **The FDIC And Multibank Specifically Acknowledged And Agreed In The Loan Sale Agreement That Section 1821(d)(13)(D) Does Not Apply to Multibank.**

Notably, in recognition of Section 1821(d)(13)(D)'s inapplicability to a private party, and consistent with the position the FDIC took before the Supreme Court in *Henrichs*, the FDIC and MultiBank expressly acknowledged and agreed in the loan sale agreement that MultiBank would not assert the statute as a defense in any action concerning the loan:

> The Company [Multibank] shall be entitled to assert (and claim the benefit of) the statute of limitations established under 12 U.S.C. § 1821(d)(14). The Company acknowledges and agrees, however, that the assignment of any Loan . . . shall not constitute the assignment of any other rights, powers or privileges granted to the Initial Member [FDIC] pursuant to the provisions [sic] Federal Deposit Insurance Act, including those granted pursuant to 12 U.S.C. § 1821(d), 12 U.S.C. § 1823(e) and 12 U.S.C. § 1825, all such rights and powers being expressly reserved by the Initial Member; *nor shall the Company assert or attempt to assert any such right, power or privilege in any pending or future litigation involving any Loan transferred or purchased hereunder.*

D.E. 17, Ex. 8 at 35). This provision takes a belt-and-suspenders approach by, first, denying Multibank an assignment of the FDIC's rights under Section 1821(d)(13)(D), and, second, to the

9

extent Multibank might arguably enjoy such rights absent an assignment, having it affirmatively waive any such rights, thereby protecting the borrower from any illegitimate assertion by Multibank. This covenant reflects and preserves the FDIC's considered judgment that Section 1821(d)(13)(D) does not and should not apply to a loan assignee. MultiBank is now estopped from claiming otherwise, and this Court can be doubly and triply confident that it confronts no jurisdictional impediment.

## II.   IN ANY EVENT, PLAINTIFFS EXHAUSTED THEIR ADMINISTRATIVE REMEDIES BY FILING A CLAIM FOR PAYMENT WITH THE FDIC.

Even assuming, *arguendo*, that Section 1821(d)(13)(D) might apply, however, the Westbergs have done all that might fairly (and constitutionally) be demanded of them with respect to exhaustion.

### A.   The Filing Of The Claim Itself Accomplished Exhaustion.

In *Freeman v. F.D.I.C.*, 56 F.3d 1394 (D.C. Cir. 1995), the D.C. Circuit held that, pursuant to Section 1821(d)(13)(D), the district court lacked jurisdiction to entertain the plaintiffs' injunctive and declaratory relief claims *against the FDIC* because they had not previously filed *any* administrative claim. *Id.* at 1399. But the Westbergs in this case *did* file an administrative claim. While their administrative claim was one for damages, that was all they could lawfully file; they certainly could not have obtained a formal declaratory judgment at the administrative level that would have bound Multibank.

By the express terms of the federal Declaratory Judgment Act, *only* a "court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration" with "the force and effect of a final judgment or decree." 28 U.S.C. § 2201(a). Declaratory relief is creature of statute limited by the terms thereof. The FDIC had no authority to issue a declaration of rights binding on the successors and assigns of the parties.

10

Moreover, the definition of "claim" in FIRREA does not encompass one for declaratory judgment. Subsection (i) of Section 1821(d)(13)(D) specifically distinguishes a "claim" from an "action seeking a determination of rights" (*i.e.*, for declaratory judgment). These are, it follows, different things under FIRREA. There would be no need to separately identify and address "a determination of rights" if such a determination constituted a sub-type of "claim." Nor should the separate reference be understood as mere elaboration on the possible types of relief encompassed by the term "claim," for there is no such elaboration to be found within subsection (ii). The best understanding is that "a determination of rights" differs from, and is not covered by, the word "claim." *See Rodriguez v. U.S.*, 480 U.S. 522, 525 (1987) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.") (internal citations, quotations, and brackets omitted).

Because "claim" does not encompass an "action seeking a determination of rights" in the jurisdictional bar of Section 1821(d)(13)(D), and "claim" must be given a single uniform meaning throughout FIRREA as held by the D.C. Circuit in *American National*, it follows that "claim" in the administrative review provisions of the statute does not include a claim for declaratory judgment. Rather, as the Third Circuit observed in *National Union Fire Insurance Company of Pittsburgh v. City Savings*, 28 F.3d 376 (3d Cir. 1994), "claim" as used in FIRREA appears to be limited to a request for "payment." *Id*. at 387-88. The "claim" submittal and processing provisions of FIRREA contemplate as much by referring to the FDIC "pay[ing] all valid obligations of the insured depository obligation," 12 U.S.C. § 1821(d)(2)(H), "settl[ing] all uninsured and unsecured claims on the receivership with a final payment", *id.*, § 1821(d)(4)(B)(i), "pay[ing] creditor claims which are allowed by the Receiver", *id.*, §

11

1821(d)(10)(A), and "pay[ing] dividends on proved claims." *Id.*, § 1821(d)(10)(B). *None* of these provisions references or provides for the submittal and determination of a claim for declaratory judgment. The only place that an "action seeking a determination of rights" is referenced in FIRREA is in the jurisdictional bar of Section 1821(d)(13)(D) where, as noted above, it is specifically *distinguished* as different from a "claim."

In *Freeman*, the D.C. Circuit noted the plaintiffs "could have filed claims seeking a determination by the FDIC of their rights and obligations under the various notes and agreements at issue." 56 F.3d at 1404. This is correct insofar as a soliciting an opinion from the FDIC as to its view of the parties' rights, but this would have bound *only* the *FDIC*. It would not have risen to the level of a judgment enforceable against the FDIC's successors and assigns such as Multibank because, as noted above, only a court may issue such a declaration under the Declaratory Judgment Act. There was no way for the Westbergs to have sought and obtained a declaration of rights at the administrative level that would have been binding on a loan assignee. *Freeman* holds that not seeking declaratory relief constitutes a failure to exhaust administrative remedies *in a subsequent action against the FDIC*; that makes sense given that the FDIC would have bound itself by virtue of its opinion (not because it was a judgment, but by estoppel) such that a successful administrative claim could have potentially obviated the suit. But *Freeman* did not have occasion to address and did not hold that the same holds true for a subsequent action against an assignee.

Tellingly, the administrative claim process did not allow the Westbergs to seek declaratory relief against a third-party such as Multibank, as held in *American National*. 642 F.3d at 1143 (declining to construe "claim" in FIRREA broadly to encompass claims against third-parties because that would "offer[] only a pointless bureaucratic exercise"). Because the

12

administrative claims process could not have resolved the instant issue *as to Multibank*, not seeking declaratory relief at that level should not be deemed a failure to exhaust administrative remedies *for purposes of a subsequent action against Multibank* (as distinguished from one against the FDIC, as was addressed in *Freeman*).

Moreover, even as to FDIC, the Westbergs need not have included a separate request for declaratory relief along with their damages claim in order to exhaust administrative remedies; they were not required to raise every issue at the administrative level that might accompany their monetary claim (again, in *Freeman*, no claim at all was filed). The U.S. Supreme Court considered the requirement of "issue exhaustion" (*i.e.*, inclusion of a particular issue in the claim that is filed) in *Sims v. Apfel*, 530 U.S. 103 (2000). It noted that some statutes and regulations – such as the one governing appeals from the National Labor Relations Board, which provides that "no objection that has not been urged before the Board . . . shall be considered by the court" – expressly require issue exhaustion at the administrative level before judicial review may properly proceed. *Id.* at 108 (quoting 29 U.S.C. § 160(e)). But the Social Security Act involved in *Sims* did not include an issue exhaustion requirement, stating only that there must be a "final decision" on an administrative claim for judicial review. *Id.* at 106. Nor was there any regulation imposing such a requirement. *Id.* at 111. The Supreme Court then noted that "we have imposed an issue-exhaustion requirement even in the absence of a statute or regulation," *id.* at 108, but explained that it has done so only when the administrative proceeding was "adversarial" in nature. *Id.* at 109. "Where, by contrast, an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker." *Id.* at 110. Because "Social Security proceedings are inquisitorial rather than adversarial," *id.* at 110-11, "we hold that a judicially created issue-exhaustion requirement is inappropriate." *Id.* at 112.

The same holds here. As in *Sims*, nothing in Section 1821(d)(13)(D) or elsewhere in subsection (d) of the statute imposes any issue exhaustion requirement on judicial review, nor does there appear to be any administrative regulation to this effect. Thus, the question is whether a common-law requirement of issue exhaustion requirement should now be fashioned and applied. The answer is a resounding *no*. There was no adversarial process below whereby the Westbergs and the FDIC articulated opposing positions to sharpen the issues for resolution by an administrative law judge, nor even an inquisitorial process whereby an administrative law judge investigated the facts and developed arguments both for and against a particular outcome. Rather, all that occurred was that the Westbergs submitted a claim to the FDIC, which claim the FDIC rejected without any explanation beyond the rote statement that the claim had not been proven "to the satisfaction of the Receiver." D.E. 17, Ex. 7 (claim denialletter). No administrative law judge was even involved in the process, which was not remotely adjudicative. Simply stated, special warrant for insisting upon further exhaustion, down to the level of issue exhaustion not spelled out via statute or regulation, is sorely lacking.

>    **B.    Insisting Upon Additional Exhaustion Would Be Contrary To FDIC's Own Account And Instruction As To Its Administrative Process And, Thus, Unconstitutional.**

Finally, any additional exhaustion that might otherwise be required at the administrative level should not be insisted upon under these facts. Notably, the FDIC's own account and instruction confirm that its administrative process was confined to entertaining a monetary claim. The FDIC's claim form instruction stated that only a claim for monetary damages could be filed by the Westbergs. *See* D.E. 17, Ex. 6 (claim form). Specifically, it instructed: "This form is being sent to you in the event you believe the failed institution owes you *funds* . . . . If the institution does not currently owe you any *money*, it is not necessary for you to complete this

14

form." *Id*. at 2 (emphasis added).  It directed the Westbergs to provide a "[w]ritten dollar amount of the claim" and "[t]otal amount of claim." *Id*.  Moreover, it stated such monetary damages had to relate to the provision of "goods" or "services" to the "failed institution" in order to be recoverable. *Id*.  The claim form itself stated the claim had to arise from a "debt" and requested an "[A]mount of Claim" and a "Total." *Id*. at 1.  There was no mention anywhere of any ability on the part of the Westbergs to seek any other type of relief, nor any space to describe a request for non-monetary relief. *Id.*  And there is no reason for this Court to conclude that the Westbergs had non-monetary recourse available to them at the administrative level – much less that they were derelict in failing to avail themselves of it.  Certainly any reasonable person reading the claim form and instructions would understand that only monetary damages might be requested and awarded at the administrative level.

In *Freeman*, the D.C. Circuit observed that if the FDIC's communications with a borrower "did not apprise the[m] . . . of their opportunity to pursue their claims through the administrative claims process," and the borrower did not file an administrative claim for that reason, "serious due process concerns" would arise from application of the judicial bar of Section 1821(d)(13)(D). *Freeman v. FDIC*, 56 F.3d 1394, 1403 n.2.  Of course, "notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting in part *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Despite flagging the potential constitutional concern, the D.C. Circuit did not resolve it simply because "the Freemans do not make a due process argument based on lack of notice of the claims process." *Id*.

Were this Court otherwise inclined to rule that Section 1821(d)(13)(D) required the Westbergs to somehow pursue their declaratory judgment claim at the administrative level, then

15

it would need to resolve the due process issue left unanswered in *Freeman*.  Here, the FDIC's claim form and instructions effectively resolve the issue, for they seem, if anything, *calculated to deprive* the Westbergs of the opportunity to raise administratively the declaratory judgment claim.  They specifically instructed the claimant to file only a monetary claim, making plain that a declaratory relief claim such as the one at issue would not be entertained.  A reasonable person reading these documents would have no inkling that a non-monetary claim might be brought against FDIC administratively, much less that it would need to be brought against FDIC administratively on pain of disabling judicial relief otherwise available against a later assignee.  *Mullane* requires the best notice practicable under the circumstances; suffice it to say that the standard was not remotely satisfied here.  *See Gonzalez v. Sullivan,* 914 F.2d 1197, 1203 (9th Cir. 1990) (notice violated due process because it was "sufficiently misleading that it introduces a high risk or error"); *Butland v. Bowen*, 673 F. Supp. 638, 641 (D. Mass. 1987) ("Notice that affirmatively misleads in this fashion clearly violates the Constitutional guarantee of due process."); *Christopher v. Secretary of Health and Human Serv.*, 702 F. Supp. 41, 43 (N.D.N.Y. 1989) ("even a notice which is merely ambiguous may violate an applicant's due process rights . . . [because] [i]ts very ambiguity may cause it to be misleading").

Because the notice of the administrative claims process was constitutionally deficient, the bar of Section 1821(d)(13)(D) could not possibly apply.  We respectfully submit that there is no need, however, to reach and resolve any such constitutional question.  For reasons explained above, the administrative process available via FDIC was altogether inapposite to the instant request for declaratory judgment against a third party such as Multibank and was in any event exhausted, according to FDIC's own instruction and account of its administrative process, with the Westbergs' filing of a responsive claim for payment.  To now require that the Westbergs

have done something more in order to earn their way to full and fair adjudication in court would be unwarranted, unhelpful, and unconstitutional.

In sum, the Court is well positioned to resolve the merits of the important issues before it, particularly whether the FDIC's repudiation of the loan discharged the Westbergs' performance obligations thereunder.

## **CONCLUSION**

For the reasons set forth in the Westbergs' prior summary judgment filings, as supplemented by this brief, the Court should deny Multibank's motion for summary judgment and grant their cross-motion, declaring that *all* of the loan documents (*i.e.*, the Loan Agreement, the Promissory Note, and the Deed of Trust) are no longer effective and enforceable against the Westbergs by virtue of the FDIC's repudiation of them.

Dated: January 27, 2012          Respectfully submitted,

        Christopher A. LaVoy, Esq. (AZ Bar No. 016609)
        (admitted *pro hac vice*)
        LAVOY & CHERNOFF, PC
        201 North Central Avenue, Suite 3300
        Phoenix, Arizona 85004
        (602) 253-3330
        (602) 253-3389 (fax)
        cal@lavoychernoff.com

        _/s/_ Derek L. Shaffer
        Derek Shaffer (D.C. Bar No. 478775)
        COOPER & KIRK, PLLC
        1523 New Hampshire Ave., N.W.
        Washington, D.C. 20036
        (202) 220-9600
        (202) 220-9601 (fax)
        dshaffer@cooperkirk.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of January, 2012, a true and correct copy of the foregoing was served via the Court's electronic filing system.

/s/ McKinley B. Cooper

McKinley B. Cooper
