**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

KIM S. WESTBERG, *et al.*,

               Plaintiffs,

       v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, *et al.*,

               Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 09-1690 (ABJ)

<u>**AMENDED MEMORANDUM OPINION**</u>

       Plaintiffs Kim and Laverne Westberg sued to prevent the defendants from enforcing the provisions of a construction loan agreement they made with Silver State Bank.  Defendants are the successors to Silver State Bank: the Federal Deposit Insurance Corporation ("FDIC"), which took over the bank after it failed, and Multibank 2009-1 RES-ADC Venture, LLC ("Multibank"), which became the successor-in-interest to the Westbergs' loan when it purchased the loan from the FDIC.  The court granted a motion to dismiss as to the FDIC, so the only remaining claim in this case is for declaratory judgment against Multibank.

       The issue before the Court now is whether it has subject matter jurisdiction over this claim.  The Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"), which authorizes the FDIC to take over failing depository institutions, established an administrative process for the adjudication of claims arising from the FDIC's actions.  Affected parties must pursue their claims through the administrative process before they can invoke the court's jurisdiction.  Because the Westbergs did not submit their claim for administrative adjudication, they did not exhaust their administrative remedies.  Accordingly, the Court does not have

jurisdiction over this claim against Multibank, and the remaining count in the complaint will be dismissed.

## BACKGROUND

In May of 2008, the Westbergs took out a construction loan with Silver State Bank to build a home on real property they owned in Arizona.[1]  Am. Compl. ¶ 7.  A lien was placed on the property as part of the construction loan agreement.  *Id.* ¶ 9.  The Westbergs submitted a first draw request under the loan and received a disbursement of $171,510.95.  *Id.* ¶ 13.  They received no further disbursements under the loan because before they could complete construction, Silver State Bank failed, and the FDIC took it over as receiver.  *Id.* ¶ 15.  After assuming control of Silver State, the FDIC exercised its statutory authority as receiver to repudiate the Westbergs' loan.  *Id.* ¶ 17 and Ex. 5.  The receiver's decision to disaffirm the loan agreement relieved the agency, as receiver, of any obligations with respect to the unfunded portion of the loan, and the letter noted, "[w]ith respect to any outstanding balance previously funded, future payments should be made in accordance with the terms of your agreement with the institution."  *Id.*, Ex. 5.

The Westbergs filed an administrative claim with the FDIC for damages arising from the repudiation, and the FDIC denied the claim.  *Id.* ¶¶ 18–19, Exs. 6–7.  After the repudiation, the FDIC demanded that the Westbergs repay the money they had been obligated to repay to Silver State under the loan agreement.  *Id.* ¶ 20.

On September 3, 2009, the Westbergs sued the FDIC challenging its efforts to enforce their loan agreement with Silver State Bank.  Count I sought a declaratory judgment that:  (a) the

---

1    The facts and procedural history of this case were set out in an earlier opinion, *Westberg v. FDIC*, 759 F. Supp. 2d 38 (D.D.C. 2011).  For brevity, this opinion sets forth the allegations and procedural history relevant to the issue now before the Court.

FDIC could not repudiate the loan and still require the Westbergs to repay the funds they had already received; and (b) the lien on the property was null and void. Count II sought damages arising from the repudiation and delays with construction. On November 9, 2009, the FDIC filed a motion to dismiss.

Three months later, on February 9, 2010, the FDIC sold the Westberg loan to Multibank, which reiterated the demand that the Westbergs repay the funds disbursed to them under the loan agreement. *Id.* ¶ 23. The Westbergs filed an amended complaint on July 19, 2010, in which they added the factual allegations that the FDIC sold the loan to Multibank and that Multibank, in turn, had demanded repayment. The amended complaint added Multibank as a defendant to Count I for declaratory judgment but not to Count II for damages. *Id.* ¶¶ 23, 28. Multibank moved to join the FDIC's motion to dismiss on August 25, 2010. On January 4, 2011, the court granted the motion to dismiss as to the FDIC and denied it as to Multibank.[2] The only count remaining is Count I for declaratory judgment against Multibank.

On March 21, 2011, Multibank filed a motion for summary judgment and plaintiffs filed a cross motion on April 11, 2011. Def.'s Mot. for Summ. J. [Dkt. # 38], Pls.' Cross-Mot. for Summ. J. [Dkt. #40]. The parties briefed their summary judgment motions. Pls.' Opp. to Mot. for Summ. J. [Dkt. # 39]; Def.'s Reply to Opp. to Mot. for Summ. J. and Opp. to Cross Mot. [Dkt. ## 41, 42], Pls.' Reply to Opp. to Cross Mot. [Dkt. # 43].

On January 3, 2012, the court stayed the case and ordered the parties to brief the issue of subject matter jurisdiction, stating:

> It has come to the court's attention that this court may lack jurisdiction to adjudicate an action seeking a determination of rights with respect to any asset of a failed bank for which the FDIC is a receiver under 12 U.S.C. §

---

2       The court dismissed Count I against the FDIC with prejudice and Count II for damages against the FDIC without prejudice. *Westberg*, 759 F. Supp. 2d at 47.

1821(d)(13).  *See Freeman v. FDIC*, 56 F.3d 1394 (D.C. Cir. 1995); *Marquis v. FDIC*, 965 F.2d 1148 (1st Cir. 1992); *MBIA Ins. Corp. v. FDIC*, 2011 WL 4721293 (D.D.C. 2011). In addition, the court has no jurisdiction if a plaintiff's claims have not been administratively exhausted. *Freeman*, 56 F.3d 1394.

Minute Order of January 3, 2012.  Supplemental briefs were filed.  *See* Pls.' Suppl. Br. [Dkt. # 48]; Def.'s Suppl. Br. [Dkt. # 49]; Pls.' Reply to Def.'s Suppl. Br. [Dkt. # 50].  Then on April 20, 2012, the case was reassigned to this Court.

## ANALYSIS

Pending before the Court are the parties' motions for summary judgment.  Before the Court can address those motions, however, it must determine whether it has jurisdiction over the dispute.  Whether the Court has subject matter jurisdiction over the claim against Multibank depends on the following:  whether the claim for declaratory judgment is governed by FIRREA in the first place, and if so, whether the Westbergs exhausted their administrative remedies as required by FIRREA.  The Court concludes that FIRREA governs the claim and that the Westbergs were required to exhaust their administrative remedies as to that claim.  Because they did not, the Court has no jurisdiction over this claim and dismisses it with prejudice.

## I.    Legal Standard

A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional authority to hear the case.  *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996).  Subject matter jurisdiction may not be waived, so a court is obliged to address it *sua sponte* if necessary.  *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996); *see Morris v. Washington Metro. Area Transit*, 702 F.2d 1037, 1040 (D.C. Cir. 1983) (matters casting doubt on federal subject matter jurisdiction may be considered on a court's own motion).  In determining whether it has subject matter jurisdiction, a

court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds,* 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987).

## II.    Statutory Framework of FIRREA

Congress enacted FIRREA in 1989 in response to the nation's banking and savings and loan crisis.  *Sharpe v. FDIC*, 126 F.3d 1147, 1154 (9th Cir. 1997).  The statute allows the FDIC "to act as receiver or conservator of a failed institution for the protection of depositors and creditors."  *Id.*  As the receiver of insolvent financial institutions, the FDIC has "wide-ranging powers to consolidate and liquidate those institutions."  *Nashville Lodging Co. v. Resolution Trust Corp.,* 59 F.3d 236, 241 (D.C. Cir. 1995).  Among its powers as receiver, the FDIC may repudiate a failed bank's contracts.  12 U.S.C § 1821(e)(1).  Although the non-breaching party may sue the FDIC as receiver for damages resulting from repudiation, FIRREA limits a claimant's damages for the repudiation of a contract to "actual direct compensatory damages." 12 U.S.C § 1821(e)(3)(A); *Nashville Lodging Co.*, 59 F.3d at 241 (stating that this limit on damages for repudiation is in the interest of maximizing the number of creditors who can recover some portion of what they are owed).

FIRREA also establishes an administrative process through which claims against a failed bank or the FDIC as receiver must be submitted.   12 U.S.C § 1821(d)(3)–(13).  Failure to exhaust these administrative remedies divests a court of jurisdiction to hear the claims:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over – (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; . . . .

5

12 U.S.C. § 1821(d)(13)(D)(i).[3]  As plaintiffs point out, the "(e)xcept as otherwise provided in this subsection" clause refers to the jurisdictional grant in 12 U.S.C. § 1821(d)(6)(A), which permits the Court to review a claim after it has been administratively denied.  *Sharpe*, 126 F.3d at 1156.  The effect of these two provisions, "read together, is to require anyone bringing a claim against or 'seeking a determination of rights with respect to' the assets of a failed bank held by the FDIC as receiver to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process."  *Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995).  "FIRREA is strict in its demand that claimants first obtain an administrative determination."  *Office & Prof'l Emps. Int'l Union, Local 2, v. FDIC*, 962 F.2d 63, 65 (D.C. Cir. 1992).

## III.    Application of FIRREA to the Claim Against Multibank

Despite the language of Section 1821(d)(13)(D), the Westbergs put forth two arguments to support their position that the Court has jurisdiction over their declaratory judgment claim against Multibank.  First, they contend that FIRREA's jurisdictional bar does not apply to their claim, and second, even if it does, they did in fact exhaust their administrative remedies.  Neither the statute nor the case law supports this conclusion.

### A.      FIRREA's Jurisdictional Provision Bars Claims Against Assignees

In Count I of the amended complaint, the Westbergs seek a declaration that:

> the FDIC's repudiation of the Agreement released and discharged Plaintiffs from any and all obligations under the Note and Deed of Trust . . . [and] a declaration that the lien against the Property created by the

---

3       This subsection also limits judicial review for "any claim relating to any act or omission of such institution or the Corporation as receiver."   12 U.S.C. § 1821(d)(13)(D)(ii).   This provision does not apply because the Westbergs do not challenge the FDIC's repudiation of their loan.  Pls.' Suppl. Br. at 6 ("To be clear, the Westbergs' declaratory judgment claim does *not* challenge the FDIC's repudiation of the loan, which the Westbergs concede was within its authority[.]") (emphasis in original).

> Deed of Trust is null and void and no longer constitutes a valid encumbrance against the Property.  Because MULTIBANK has no greater rights than the FDIC from which it acquired the Loan, Plaintiffs are entitled to the same declaration as to MULTIBANK.

Am. Compl. ¶ 28.  This claim expressly seeks a determination of rights with respect to the Westbergs' loan, and thus it falls squarely within the type of cases covered by Section 1821(d)(13)(D).  The loan was an asset of Silver State Bank, a failed institution that the FDIC took over as receiver, and Count I asks the Court to do nothing other than make pronouncements about the rights and obligations of the parties to that loan.

The fact that a third party purchases an asset from the FDIC does not extinguish the jurisdictional bar for actions under FIRREA not first presented to the FDIC.  *See Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (concluding that to allow claimants to circumvent the provisions of FIRREA's jurisdictional bar by bringing claims against the assuming bank would encourage the very litigation that FIRREA aimed to avoid); and *American First Fed., Inc. v. Lake Forest Park,* 198 F.3d 1259, n.3 (11th Cir. 1999) (noting that the acquiring bank "having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA").  Indeed, another District Court has applied these principles in a suit brought by another Silver State Bank borrower against Multibank arising out of another loan assumed from the FDIC after the Silver State insolvency.  *See Multibank 2010-1 SFR Venture LLC v. Saunders,* 2011 WL 5546960 (D. Nev. 2011), citing *AberShukovsky v. JP Morgan Chase & Co.,* 755 F. Supp. 2d 441, 447 (E.D.N.Y. 2010).

> **B.     The Jurisdictional Provisions in FIRREA Govern the Westbergs' Claim against Multibank because the Claim Does Not Challenge Independent Acts of Multibank.**

The Westbergs contend that the D.C. Circuit's opinion in *American National Ins. Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011), relieves them from the effects of the jurisdictional bar.

They argue that their claim against Multibank is not a "claim" under FIRREA but one against a third party based on that third party's own conduct, so the statute's exhaustion requirement does not apply.  Pls.' Suppl. Br. at 3–7.  But *American National* is distinguishable from the case at hand.

In *American National*, the plaintiffs alleged that JPMorgan Chase ("JPMC") committed various torts by persuading the FDIC to take over Washington Mutual ("WaMu") and sell its assets to JPMC.  The D.C. Circuit ruled that the plaintiffs' claims against JPMC were not "claims" within FIRREA's administrative claims process because they involved allegations that JPMC independently engaged in wrongdoing that prompted the FDIC to act.  *American Nat'l*, 642 F.3d at 1142.  Specifically, the plaintiffs alleged that JPMC

- planted personnel at WaMu to gather information about its financial health;

- misused access to government regulators to gain non-public information about WaMu;

- misrepresented that it would engage in good faith negotiations with WaMu to purchase the company;

- leaked information to the press to distort the market and regulatory perception of WaMu's financial health;

- exerted improper influence over regulators; and

- negotiated with the FDIC about buying WaMu's assets before the FDIC seized WaMu's assets.

*Id.* at 1139–40.  Assuming the truth of the plaintiffs' allegations, the D.C. Circuit held that the plaintiffs' claims challenging this conduct fell outside the FIRREA administrative claims process because they could not have been resolved through the administrative process.  *Id.* at 1142.  "Appellants' suit seeks relief from JPMC for its own conduct; the mere fact that JPMC now owns assets that Washington Mutual once owned does not render this suit one against or seeking

8

determination of rights with respect to those assets." *Id.*  That is not the situation here.

Although the Westbergs insist now that Multibank's independent interpretation and enforcement of the loan underlies their claim, Pls.' Suppl. Br. at 5, that is not what the complaint alleges.  All the amended complaint adds that differs from the original complaint are factual allegations that the FDIC sold their loan to Multibank and that Multibank, like the FDIC, demanded payment under the loan agreement.  Am. Compl. ¶ 23.  Indeed, in adding Multibank to Count I for declaratory judgment, plaintiffs expressly equate the acquiring bank to the receiver:  "Because MULTIBANK has no greater rights than the FDIC from which it acquired the Loan, Plaintiffs are entitled to the same declaration as to MULTIBANK."  *Id.* ¶ 28.  So unlike in *American National*, plaintiffs here do not point to any independent conduct by Multibank that would give rise to claims against it outside FIRREA.  All they allege and seek is a declaration that Multibank, as a successor to the FDIC, is not entitled to enforce the terms of an agreement that the FDIC repudiated and tried to enforce.  Am. Compl. ¶ 28.

Thus, the dismissal of this action would not be inconsistent with the law of this Circuit.  In *American National,* the Court of Appeals did not reject the Ninth Circuit's holding in *Village of Oakwood;* it simply distinguished it.  642 F.3d at 1144.[4]  The determining factor in these cases is

---

4    Other authority cited by the plaintiffs also does not compel a different result. It is true that in *FDIC v. McFarland*, 243 F.3d 876, n.42 (5th Cir. 2001), the court commented in a footnote that the jurisdictional bar ends when the FDIC relinquishes ownership of bank property.  But the case did not directly present the question of court's jurisdiction over a claim made against the FDIC's assignee seeking a determination of rights under the terms of an asset of a failed bank. The question was the priority of the FDIC's lien, later assigned to another, under state law, and whether Louisiana's mortgage reinscription law, a subject not addressed in FIRREA, was binding on the FDIC.  Apparently, the question of the district court's jurisdiction was raised for the first time in oral argument before the Court of Appeals, so it is not clear whether the court had the benefit of full briefing on the point, but in any event, the court's observation was contrary to other, more persuasive authority. *Hendrichs v. Valley View Dev.,* 474 F.3d 609 (9th Cir. 2007), is even less helpful.  In that case, the assignee was the plaintiff, and he brought an action challenging a state court judgment against him in federal court. He cited Section

not the identity of the defendant or when the complained-of acts occurred, but rather, the nature of the claim:  are plaintiffs challenging independent acts of a third party or are they seeking a determination of rights with respect to an asset of a failed bank?  The Westbergs' lawsuit is not against Multibank for its own alleged wrongdoing.  It is a cause of action against Multibank solely in its role as successor-in-interest to the FDIC.  The FDIC repudiated the loan and sought to have the Westbergs repay the disbursed funds pursuant to the loan agreement, and Multibank, as purchaser of the loan, seeks to do the same:  it has stepped into the shoes of the FDIC as purchaser of the loan.  Thus, the Westbergs' action against Multibank is an "action seeking a determination of rights with respect to [an] asset[] of any depository institution for which the Corporation has been appointed receiver," which this Court cannot hear if plaintiffs did not exhaust their administrative remedies.

Plaintiffs maintain that they are simply relying upon the agency's own interpretation of the statute, and they cite a brief from the FDIC opposing a writ of certiorari to the Supreme Court.  Pls.' Suppl. Br. at 7–10.  But the quote from the FDIC's brief that "Section 1821(d)(13)(D) does not apply to claims that are not susceptible of resolution through the administrative procedure" does not alter the landscape; *American National* made that point clear. *See* 642 F.3d at 1142 (holding that the word "claim" is a term-of-art that refers only to claims that are resolvable through the FIRREA administrative process and that a suit against a third-party bank for its own wrongdoing is not a claim within the meaning of the statute).  The Westbergs' claim would have been susceptible to resolution through the administrative procedure because it is an action that seeks a determination of rights with respect to the assets of

---

1821(d)(13)(D) in support of his argument that FIRREA conferred exclusive jurisdiction on the federal courts, but the court's decision that the statute could not be invoked by the assignee for that purpose does not resolve the question here.

the failed bank for which the FDIC was appointed receiver, and thus, it is the very type of action

covered by Section 1821(d)(13)(D).[5]

### C.   The Westbergs Did Not Exhaust their Administrative Remedies as to the Pending Claim.

The Westbergs contend that even if the jurisdictional and exhaustion requirements of

FIRREA apply to their declaratory judgment claim, the claim for damages they filed with the

FDIC exhausted their administrative remedies.  Pls.' Suppl. Br. at 10.  They argue that they did

not need to file a separate administrative claim for declaratory judgment because:  (1) their

administrative claim for damages satisfies the exhaustion requirement; (2) the FDIC could not

give them a declaratory judgment; and (3) the FDIC's claim form only allowed them to file a

claim for monetary damages, raising due process issues.  *Id.* at 10–17.  These arguments fail.

Plaintiffs argue that by submitting an administrative claim to the FDIC for damages, they

exhausted their administrative remedies as to all other claims they may have had with respect to

their loan.  Pls.' Suppl. Br. at 10–14.  But the requirement to exhaust administrative remedies

applies to each claim a plaintiff may have.  "Where a FIRREA complaint alleges entirely new

legal theories that are different than those reflected in the administrative proof of claim, the

Court is without subject matter jurisdiction to consider the new causes of action."  *BHC Interim*

*Funding, L.P. v. FDIC*, 851 F. Supp. 2d 131, 138, n.4 (D.D.C. 2012) (edits and citations omitted)

(dismissing declaratory judgment claim because plaintiff did not first present the claim to the

---

5      Plaintiffs also cite the loan sale agreement between the FDIC and Multibank as supporting their position that their declaratory judgment claim is not governed by FIRREA.  Pls.' Suppl. Br. at 9 (pointing to language in the loan sale contract that states Multibank cannot assert certain rights, powers, or privileges that the FDIC has under FIRREA in any pending or future litigation involving the loan).  The terms of the loan sale agreement have no bearing upon the issue of the Court's jurisdiction, though, because it is well-established that "two parties cannot by consent confer subject matter jurisdiction on a court."  *Nichols v. Pierce*, 740 F.2d 1249, 1260 (D.C. Cir. 1984).

receiver), citing *Jahn v. FDIC*, 828 F. Supp. 2d 305, 317 (D.D.C. 2011) (dismissing claims for civil conspiracy and conversion because only a claim for fraudulent transfer was submitted to the receiver); *McGothlin v. Resolution Trust Corp.*, 913 F. Supp. 15, 18–19 (D.D.C. 1996) (dismissing claims for negligence and breach of contract because only a claim for fraudulent inducement was submitted to the receiver); *Aljaf Assoc. Ltd. P'ship v. FDIC*, 879 F. Supp. 515, 517–518 (E.D. Pa. 1995) (dismissing fraud claim because it was not among the claims submitted to the receiver); *Brown Leasing Co. v. FDIC*, 833 F. Supp. 672, 674–76 (N.D. Ill. 1993) (dismissing claims for conversion and breach of contract because only a claim for breach of other agreements was submitted to the receiver); *Coleman v. FDIC*, 826 F. Supp. 31, 32 (D. Mass 1993) (dismissing claims in amended complaint that plaintiffs had not presented first to the FDIC administrative claims process); *Hibyan v. FDIC*, 812 F. Supp. 271, 275 (D. Me. 1993) (dismissing claims based on one contractual provision because only another contractual provision was presented to the receiver as the basis for a claim).[6]  Other circuit courts have also dismissed declaratory judgment claims for failure to exhaust.  *See Tri-State Hotels, Inc. v. F.D.I.C.*, 79 F.3d 707, 717 (8th Cir. 1996) (holding that "a declaratory judgment action *is* an 'action seeking a determination of rights.' No reasonable argument can be offered that the plain meaning of the 'any action seeking a determination of rights' language of § 1821(d)(13)(D) does not include complaints requesting declaratory relief") (emphasis and quotation marks in original, edits omitted), quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 385 (3d Cir. 1994).

---

6       The breadth of the claims involved in these cases contradict plaintiffs' argument that their failure to exhaust should be excused because the FDIC's printed claim form did not clearly notify them that they could do more than simply ask for damages.

The Westbergs also assert that they were not required to submit their claim seeking a determination of their rights under the loan agreement to the FDIC because the FDIC could not issue a declaratory judgment binding on Multibank.  Pls.' Suppl. Br. at 12.  But this argument misses the point.  It was the FDIC that repudiated the loan and demanded that the Westbergs repay the funds.  And the Westbergs had a window of time in which to clarify their rights while the agency still owned the loan.  It is true that the Westbergs filed a claim for the damages that flowed from the repudiation, but they did not invoke the administrative process to seek a determination of rights concerning their obligation to pay.  The Westbergs argue that would have been an empty gesture because the agency's determination would not have been binding on its successor, but they cite no authority for that proposition, and it runs counter to the decisions cited above that hold that the acquiring bank stands in the shoes of the receiver.  *See Village of Oakwood*, 539 F.3d at 386; *American First Fed., Inc.,* 198 F.3d 1259, n.3.[7]

## CONCLUSION

The Court appreciates the Westbergs' desire to obtain relief for the consequences of the FDIC's repudiation of their loan.  But they must do so through the mechanism established under FIRREA.  Since they failed to do so, the Court will dismiss the claim for declaratory judgment against Multibank for lack of subject matter jurisdiction.

---

[7]     The Westbergs also submit that the claims procedure did not afford them due process because the claim form did not list the full panoply of claims that could be lodged against the receiver. They suggest that this case therefore presents the question left open in *Freeman* concerning whether a failure to notify a potential claimant of the availability of the claims process would violate the constitution.  *See* 56 F.3d at 1403–07.  But here, as in *Freeman,* there is no dispute that the Westbergs were notified about the claims process, and in fact, they filed a claim.  And in that notice, they were specifically advised that future payments by the borrowers were to be made in accordance with the loan agreement with Silver State Bank.  Am. Compl., Ex. 5.

AMY BERMAN JACKSON
United States District Judge

DATE:  February 26, 2013